**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERICAN SPECIALTY HEALTH GROUP, INC. dba AMERICAN SPECIALTY HEALTH NETWORKS,<br><br>　　　　Plaintiff,<br>vs.<br><br>HEALTHWAYS, INC.,<br><br>　　　　Defendants. | CASE NO. 11-CV-02819 BEN (KSC)<br><br>**ORDER: GRANTING DEFENDANT/COUNTER-CLAIMANT'S MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTERCLAIMS**<br><br>[Docket Nos. 34 and 17] |
| HEALTHWAYS, INC.,<br><br>　　　　Counter-Claimant,<br><br>AMERICAN SPECIALTY HEALTH GROUP, INC. dba AMERICAN SPECIALTY HEALTH NETWORKS,<br><br>　　　　Counter-Defendant. | |

　　　　Presently before the Court is Defendant/Counter-Claimant's Motion for Leave to File Second Amended Counterclaims ("SACC"), [Docket No. 34] and Plaintiff/Counter-Defendant's Motion to Dismiss the Amended Counterclaims [Docket No. 17]. For the reasons stated below, the Motion for Leave to File Second Amended Counterclaims is **GRANTED** and the Motion to Dismiss the Amended Counterclaims is **DENIED** as moot.

**BACKGROUND**

Plaintiff/Counter-Defendant American Specialty Health Group, Inc. ("ASH") originally filed a Complaint on December 2, 2011 against Defendant/Counter-Claimant Healthways, Inc. ("Healthways") for intentional/tortious interference with contract/contractual relations, intentional/tortious interference with business relations/prospective economic advantage, and for violations of California Business and Professions Code § 17200. The Complaint was amended in May 1, 2012 to add claims for Sherman Act § 1 and § 2 violations. On January 13, 2012, Healthways filed initial Counterclaims against ASH for intentional interference with contractual relations, intentional interference with prospective economic advantage, and unfair competition based on the California Business and Professions Code § 17200. On February 3, 2012, ASH moved to dismiss the Counterclaims. Healthways withdrew the Counterclaims and simultaneously filed amended counterclaims on February 24, 2012. On March 9, 2012, ASH again moved to dismiss the Amended Counterclaims.

According to the proposed SACC, ASH and Healthways are competitors in the senior fitness benefits market. (SACC ¶¶ 1, 6.) Both companies contract with fitness facilities to provide a network of facilities for their health plan customers who will offer the programs to their senior members. (First Am. Compl. ¶¶ 19-20, SACC ¶ 16.) The program offered by Healthways is called the SilverSneakers Fitness Program ("SilverSneakers"), and ASH's program is called the Silver&Fit Fitness Program ("Silver&Fit"). (SACC ¶¶ 1, 6.) Health plans choose senior fitness benefits programs mainly based on the size and composition of the network. (First Am. Compl. ¶ 21.)

ASH maintains a marketing website for its products, including Silver&Fit, which is open to the public. (SACC ¶ 59.) The website directs visitors to "SilverandFit.com" for more details regarding the Silver&Fit Program. *Id*. On the front page of "SilverandFit.com," there is a "Find a Fitness Facility" feature that advises visitors to "Use the Find a Fitness Facility search to view Silver&Fit facilities in your area." *Id*. On the search page, visitors are instructed to search for "a listing of Silver&Fit fitness facilities near you." *Id*. Visitors may search in the online directory by facility type, name, zip code/proximity, state/city, and state/county. *Id*. The search page further

provides that "you may not have access to all of the facility types listed," and that "Information in this directory is updated daily and subject to change without notice." *Id*.

In May and June of 2012, Healthways contacted 366 of its fitness facilities that were listed in the Silver&Fit online directory as being "Silver&Fit facilities." (*Id*. ¶ 60.) Sixty-two (62) of the facilities confirmed that they are not in the Silver&fit network. *Id.* Some of them reported being unfamiliar with Silver&Fit, some reported that ASH unsuccessfully tried to enlist them, and twenty (20) others reported that they used to be in the Silver&Fit network but subsequently canceled/terminated with ASH, including those who reported having previously requested that ASH remove them from the Silver&Fit website. *Id*.

Healthways now wants to add counterclaims for false advertising under the Lanham Act and violation of the Unfair Competition Law under the California Business & Professional Code § 17200, *et. seq*. Being fully briefed, the Court finds the motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1.

## DISCUSSION

Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, if a proposed amendment fails to state a claim, a court may deny the motion for leave to amend as futile or legally insufficient. *Eminence Capital, LLC, v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003). The Court applies the same standard for determining futility that is used to decide a Rule 12(b)(6) motion to dismiss for failure to state a claim.[1]

---

[1] *Miller v. Rykoff–Sexton, Inc.*, the governing case in futility of amendment in the Ninth Circuit held that "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." 845 F.2d 209, 214 (9th Cir. 1988). However, the holding was buttressed by the observation that the test for futility should be "identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Id*. The Supreme Court's rulings in *Twombly* and *Iqbal* raise the pleading standard from "no set of facts" to "plausibility," but the Ninth Circuit has not revisited the futility standard yet. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 582 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, (2009). Thus, it remains an open question which pleading standard applies to futility of amendment. That being said, the Court notes that this unresolved issue does not affect the outcome of this motion. As the Court will discuss below, Healthways' allegations are sufficient to satisfy the "plausibility" standard, and therefore must also satisfy the "no set of facts" standard as it requires less than "plausibility" standard.

ASH opposes Healthways' Motion for Leave to File Second Amended Counterclaims, arguing that the fourth and fifth proposed counterclaims are futile. ASH argues that (1)[1] Healthways lacks Article III standing to bring a Lanham Act claim, (2) Healthways fails to state a claim for relief under the Lanham Act, and (3) Healthways fails to meet the heightened pleading standard of Rule 9(b) of the Federal Rule of Civil Procedure.

### I.     FUTILITY BASED ON LACK OF ARTICLE III STANDING

ASH argues that Healthways lacks standing because it fails to adequately allege a competitive injury. "Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use of false designations of origin, false descriptions, and false representations in the advertizing [sic] and sale of goods and services." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1036 (9th Cir. 2005). To establish standing for the false advertising prong of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is "competitive," or harmful to the plaintiff's ability to compete with the defendant. *Jack Russell Terrier Network of N. Cal.*, 407 F.3d at 1037. For a claim under the Lanham Act to be actionable, "conduct must not only be unfair but must in some discernible way be competitive." *Halicki v. United Artists Commc'ns, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987). A false advertising plaintiff needs only show that she is *likely* to be injured. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (citing 15 U.S.C. § 1125(a)).

The Ninth Circuit has "generally presumed commercial injury when defendant and plaintiff are direct competitors and the defendant's misrepresentation has a tendency to mislead consumers." *Id.* at 826. "Competitors 'vie for the same dollars from the same consumer group,' and a misleading ad can upset their relative competitive positions." *Id.* at 827 (quoting *Kournikova v. Gen. Media Commc'ns, Inc.,* 278 F. Supp. 2d 1111, 1117 (C.D. Cal. 2003)).

ASH cites a litany of cases holding a conclusory allegation of injury is insufficient to establish standing. However, none of the cases involves a direct competitor alleging competitive injuries. *Barrus v. Sylvania* is inapposite because the plaintiffs were consumers, not direct competitors of the defendant. 55 F.3d 468, 470 (9th Cir. 1995). In *Kournikova v. General Media Communications Inc.*,

the plaintiff did not allege any injuries she would suffer as a competitor. 278 F. Supp. 2d at 1119. In *McCabe v. Floyd Rose Guitars*, the plaintiff owned pertinent patents but did not directly compete with the defendant manufacturer. No. 10CV581 JLS (JMA), 2012 WL 1409627, at *7 (S.D. Cal. Apr. 23, 2012). The court held that the plaintiff's assertion that he was unable to procure licenses at least in part due to the defendant's false marking failed to allege a competitive injury. *Id*. at *7-8.

Here, there is no dispute that ASH and Healthways are direct competitors in the senior fitness benefits market. (SACC ¶¶ 1, 6.) The alleged false statements allow ASH to misrepresent its network, which, as ASH itself has claimed, is the most significant criteria for ASH and Healthways to compete for health plan customers. (First Am. Compl. ¶ 21, SACC ¶ 61.) The Ninth Circuit gave an example of a discernibly competitive injury in *Waits v. Frito–Lay, Inc.*: "If a film's distributor wrongfully indicates that a film is 'PG'-rated when in reality it should be 'R'-rated, a competitor with a PG-rated film would have standing: the misrated film theoretically draws young audiences away from the competitor's film because of the misrepresentation concerning the suitability of its content." 978 F.2d 1093 (9th Cir.1992). This case is similar in that the allegedly false information about participating facilities would draw health plan customers away from Healthways by making them believe that ASH offers a more attractive network of facilities.

Accordingly, Healthways has alleged a plausible discernibly competitive injury and thus has standing to bring the Lanham Act false advertising claim.

## II.     FUTILITY BASED ON FAILURE TO STATE A PLAUSIBLE CLAIM

ASH also argues that the amendment is futile because the proposed counterclaims would be dismissed under Rule 12(b)(6) of the Federal Rule of Civil Procedure for failure to state a plausible claim for relief. In order to prove a claim for false advertising under the Lanham Act, a claimant must establish:

> 1) in advertisements, defendant made false statements of fact about its own or another's product; 2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; 3) such deception is material, in that it is likely to influence the purchasing decision; 4) defendant caused its falsely

advertised goods to enter interstate commerce; and 5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public.

*Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The allegations of the complaint must be accepted as true and be construed in a light most favorable to the nonmoving party. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Under this standard, a complaint will pass muster if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As a threshold matter, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Accordingly, in deciding whether the proposed amendment would be futile, the Court declines to consider the additional facts contained in the background section of ASH's Opposition brief. The section merely constitutes factual challenges to Healthways' claims that will be resolved later in the case.

ASH asserts that Healthways fails to allege: (1) ASH's statements were material; (2) ASH's statements were false and made in a commercial advertisement; and (3) Healthways has been or is likely to be injured by ASH's statements.

### A. Materiality of ASH's Statements

A false statement is material if "it is likely to influence the purchasing decision." *Rice v. Fox Broad. Co.*, 330 F.3d at 1181. ASH contends that the statements on its website are immaterial because there is no allegation that health plans are aware of or have ever seen ASH's online directory, let alone relied on the directory to make purchasing decisions. (Opp'n at 11-12.)

Healthways alleges that ASH maintains a publicly accessible marketing website for its products, including Silver&Fit. (SACC ¶ 59.) The website directs visitors to "SilverandFit.com" for more details regarding the program. *Id*. Visitors can use the "Find a Fitness Facility" feature of the website to search ASH's online directory of Silver&Fit facilities. *Id*. The Silver&Fit online directory is open to the public, including existing and potential health plan customers, and their existing and potential members. (Reply at 6.)

"A plaintiff may establish this materiality requirement by proving that the defendants misrepresented an inherent quality or characteristic of the product." *POM Wonderful LLC v. Purely Juice, Inc.*, CV 07-02633 CAS (JWJX), 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008), *aff'd.*, 362 F. App'x 577 (9th Cir. 2009) (quoting *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002)) (internal quotation marks omitted).  Given the nature and character of the online directory in the present case, the Court finds that the materiality of the statements can be established without proving that health plans and seniors have actually seen the online directory.  In *POM Wonderful LLC,* the defendant falsely advertised its juice as "100% pomegranate juice."  2008 WL 4222045, at *3.  The court held that because the false advertising concerns the very nature of the product, the false statement was material.  *Id.*  Here, similarly, the size and composition of a fitness network is also a significant characteristic.  A misrepresentation about the network would presumably affect consumers' purchasing decisions.  Therefore, the materiality of the statements is not dependent upon proof that the consumers have actually seen the online directory.  This situation is distinguishable from that in *Rice v. Fox Broadcasting*, where the alleged false advertising was only available post-sale and not accessible to potential consumers *at all*.  330 F.3d 1170, 1181 (9th Cir. 2003).  Here, the content of the online directory is not only accessible to, but also designed to be viewed by, the public, since the link of the website is provided to potential consumers for marketing purposes.  Therefore, Healthways has plausibly alleged a material statement.

### B. A False Statement of Fact in a Commercial Advertisement

#### (1) Commercial Advertisement

Commercial speech is "speech which does no more than propose a commercial transaction." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) (quoting *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 422 (1993)). ASH argues that the online directory is not commercial speech because it is intended to provide information for existing Silver&Fit members, not to propose a commercial transaction. (Opp'n at 12.) However, as Healthways points out, first, anyone has access to the directory without logging in as a member; second, ASH's marketing website for actual and potential users directs visitors to SilverandFit.com for further information about Silver&Fit. (Reply at 6.) Because of the clear promotional character of the online directory, Healthways has plausibly alleged that the false statements were made in a commercial advertisement.

#### (2) False Statement

ASH does not dispute that its online directory contains facilities that are not within Silver&Fit's network. Rather, it argues that the disclaimers on its website operate to shield its liability from any potential false statements.

"Disclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression." *Removatron Int'l Corp. v. F.T.C.*, 884 F.2d 1489, 1497 (1st Cir. 1989).

For purposes of the present motion, the Court agrees with Healthways that none of the disclaimers ASH identifies operate as a shield of liability for false statement of fact. "On [the] search page, the page listing search results, and the profile pages for individual Silver&Fit facilities," ASH provides that "[i]nformation in this directory is updated daily and subject to change without notice." (SACC ¶ 59.) It suggests that the accuracy of the current listing of facilities is checked daily and corrected daily, not that the directory may include facilities that are not in fact within the Silver&fit network.

The next sentence on that webpage continues: "You may not have access to all the facility types listed. To see a listing of club types specific to your program, you must first register or log in." (Pl.'s Ex. 1.) It only informs visitors that the facility types they may have access to can be limited, not that a facility in the online directory is not actually within the Silver&Fit network.

Finally, ASH's website contains additional disclaimers in the Terms and Conditions, which is listed on the bottom left corner of every webpage, providing that ASH "does not make any warranty, express or implied, . . . for the accuracy or quality of any information present on this Web Site. The information on this Web Site is subject to change without notice and cannot be guaranteed to be current." (Pl.'s Ex. 1.) Healthways alleges that the general disclaimer in the Terms and Conditions is not sufficiently prominent and unambiguous, as courts have held that a disclaimer "displayed in small font at the bottom of each page, where many consumers would never scroll" is not prominent. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828 (9th Cir. 2011) (discussing whether a defendant's website is misleading in the context of deciding the existence of commercial injury under the Lanham Act). It remains a question of fact whether the information provided on ASH's website is sufficient to constitute disclaimers of liability for the false statements in the online directory. Healthways has plausibly state a claim based on the false statements in the online directory.

### C. Allegation of Injury

ASH contends that Healthways fails to allege that it has been or is likely to be injured, because its allegation of injury is conclusory. (Opp'n at 14.) The Court disagrees. As direct competitors in the senior fitness benefits market, both ASH and Healthways profit by maintaining an attractive network for the health plans and their seniors members. (SACC ¶ 17.) Healthways alleges that among the 366 of its own facilities that were listed in the Silver&Fit online directory, sixty-two (62) responded that they are not in the Silver&Fit network. (SACC ¶ 59.) It can be inferred that Healthways' customers or potential customers may be misled to believe that ASH's network is superior based on the false statements in ASH's online directory, and may decide to choose ASH's product instead. Thus, Healthways has plausibly alleged an injury.

Accordingly, Healthways has plausibly stated a claim for Lanham Act false advertising violation.

### III. FUTILITY BASED ON FAILURE TO MEET THE HEIGHTENED PLEADING STANDARD OF FEDERAL RULE 9(B)

ASH argues that Healthways fails to satisfy the heightened pleading standard of Rule 9(b) of the Federal Rule of Civil Procedure. Although the Ninth Circuit has not decided whether Rule 9(b) applies to Lanham Act false advertising claims, it has held that a plaintiff may be subject to the heightened pleading standard if she alleges "a unified course of fraudulent conduct and [relies] entirely on that course of conduct as the basis of that claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)). Many lower courts have applied Rule 9(b) standard to Lanham Act false advertising claims on the basis that the claim is grounded in fraud. *See, e.g.*, *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1124 (C.D. Cal. 2009). This Court agrees that Rule 9(b) applies to Healthways' proposed counterclaims, as the allegations concern "Defendant's intent to mislead consumers by mischaracterizing" the facilities within ASH' network, which renders the counterclaims "grounded in fraud." *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d at 1124.

To satisfy Rule 9(b), a plaintiff must state the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). A plaintiff also has to explain "what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d at 1106.

Healthways alleges that the statements were posted by ASH on the online directory located on its website "SilverandFit.com"; the alleged false statements were found in May and June of 2012, during Healthways' investigation. (SACC ¶ 60.) Healthways also alleges the specific content of the

alleged false statement: of the 366 facilities listed in Silver&Fit directory, sixty-two (62) of them are not in the Silver&Fit network, including some facilities who reported being unfamiliar with Silver&Fit, others who reported that ASH unsuccessfully tried to enlist them, and twenty (20) who have already canceled/terminated with ASH. (SACC ¶ 60.)

The Court is not persuaded by ASH that in order to satisfy the heightened pleading requirement, Healthways must identify the improperly listed facilities one by one. One goal of Rule 9(b) is to ensure sufficient information about the alleged fraudulent conduct is provided so that defendants are on notice and are able to formulate defenses against the charge. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Healthways' allegations are sufficient to put ASH on notice of the specific conduct complained of by identifying "'who' made the statements, 'where' the statements were made, and 'what' was said in the statements." *Profant v. Have Trunk Will Travel*, CV 11-05339-RGK (OPx), 2011 WL 6034370 (C.D. Cal. Nov. 29, 2011). Knowing the names of the facilities is not necessary for ASH to formulate a defense, because Healthways has alleged with sufficient specificity the types of misrepresentation associated with the sixty-two (62) facilities in the directory, and the online directory is in ASH's exclusive control.

ASH also asserts that Healthways fails to name individuals that have seen or been misled by ASH's statements. This is not necessary to state a claim. "Where the advertisement is literally false, a violation may be established without evidence of consumer deception." *Mut. Pharm. Co. v. Ivax Pharmaceuticals, Inc.*, 459 F. Supp. 2d 925, 933 (C.D. Cal.+ 2006) (quoting *Scotts Co. v. United Indus. Corp.,* 315 F.3d 264, 273 (4th Cir. 2002)). Here, there is no dispute that some facilities listed on the online directory are not within ASH's network. The statements are literally false. Accordingly, Healthways does not have to name individuals who have been misled.

Having taken Healthways' factual allegations as true and construed them in the light most favorable to Healthways, the proposed counterclaims plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The proposed fourth counterclaim is not futile.

### IV. FUTILITY OF THE UCL CLAIM

Healthways' proposed fifth counterclaim for relief is for violation of the Unfair Competition Law under the California Business and Profession Code § 17200, *et. seq.*, which is dependent on proving a violation of the Lanham Act. (SACC ¶ 69.) Thus, the UCL claim "rise[s] and fall[s] together" with the Lanham Act claim. *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1182 (9th Cir. 2003). Since the Court has held that the Lanham Act claim is not futile, neither is the UCL claim

### CONCLUSION

For the reasons stated above, Healthways' Motion for Leave to File its Second Amended Counterclaims is **GRANTED**, and ASH's Motion to Dismiss Healthways's First Amended Counterclaims is **DENIED** as moot.

ASH shall file an Answer or otherwise plead no later than Oct 31, 2012.

**IT IS SO ORDERED**.

DATED:  October 12, 2012

_____
Hon. Roger T. Benitez
United States District Judge